**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**GEORGE R. ANTANUOS and**
**MONA G. ANTANUOS,**

        **Plaintiffs,**

                                      **Civil Action No. 4:06cv104**

    **v.**

**FIRST NATIONAL BANK OF ARIZONA and**
**HOMECOMING FINANCIAL NETWORK, INC.**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Plaintiffs' Motion for Leave to Amend Complaint ("Motion for Leave"), filed pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, wherein Plaintiffs seek permission to amend the Complaint in three ways: first, to add Michael Dipanni and Provident Capital Mortgage, Inc., as additional defendants to this action; second, to assert the two additional claims of fraud and breach of contract; and third, to allege new factual allegations to support the new allegations of fraud and breach of contract.  Defendants First National Bank of Arizona ("FNBA") and Homecoming Financial Network, Inc. ("Homecoming"), oppose on the ground that allowing such leave to amend would be unfairly prejudicial.  For the reasons stated herein, Plaintiff's Motion for Leave to Amend Complaint is **GRANTED** insofar as it contains new factual allegations and new claims for fraud and breach of contract; Plaintiffs' Amended Complaint shall not name Michael Dipanni and Provident Capital Mortgage, Inc, as additional defendants.  Counsel of record for both parties were notified by

1

telephone of the Court's resolution of this matter on April 30, 2007.  Accordingly, the deadlines

and dates relating to discovery and trial, pursuant to the Rule 16(b) Scheduling Order issued by

the Court on April 17, 2007, remain undisturbed.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Facts[1]

#### 1.   Two Loans

On or about April 3, 2006, Plaintiffs George and Mona Antanuos ("Plaintiffs") entered

into a refinanced mortgage contract with FNBA secured by their primary residence located at

317 Syms Street in Hampton, Virginia ("Syms Loan").  The contract was arranged and brokered

by Provident Capital Mortgage, Inc. ("Provident"), and Michael Dipanni ("Dipanni"), President

and/or Chief Executive Officer of Provident.  At that time, Dipanni allegedly informed Plaintiffs

that the Syms Loan carried a three-year introductory interest rate of 0.99%.

Shortly thereafter, on April 11, 2006, Plaintiffs entered into another mortgage loan

agreement with FNBA—again brokered by Provident and Dipanni—to borrow $234,500 for a

term of 360 months, secured by Plaintiffs' real property located at 301 Creek Avenue in

Hampton, Virginia ("Creek Loan").  This latter loan—the Creek Loan—is the subject of the

instant suit.

---

[1] The facts of this case are largely in dispute.  While the Court makes no findings of fact
at this time, the following factual account is provided for background, and has been taken from
the record before the Court, consisting of the following party submissions: (1) Plaintiffs'
Complaint, (2) Plaintiffs' proposed Amended Complaint, (3) Plaintiffs' Motion for Leave to
Amend Complaint, (4) Defendants' Brief in Opposition to Plaintiffs' Motion for Leave to
Amend (incorporating by reference the factual account contained in Defendants' Motion for
Summary Judgment), and (5) Plaintiffs' Rebuttal Brief to Defendants' Brief in Opposition.

The circumstances under which FNBA solicited the Creek Loan, Plaintiffs' original understanding of the Creek Loan, and the true terms of the Creek Loan remain in dispute. However, it appears that the parties agree that (1) the Creek Loan transaction closed on April 11, 2006; (2) the principal amount of the Creek Loan is $234,500; (3) Plaintiffs' property used to secure the Creek Loan is located at 301 Creek Avenue in Hampton, Virginia; (4) the introductory interest rate on the Creek Loan is 1.49% for at least part of its term (the duration of which is in dispute); (5) FNBA is the current holder of the Creek Loan; (6) Homecoming began servicing the Creek Loan approximately one month after closing, on May 15, 2006; (7) at the closing of the Creek Loan on April 11, 2006, Plaintiff received, among other documents, a document entitled "Notice of Right to Cancel" ("Cancellation Notice") from FNBA.[2]

## 2.    The Cancellation Notice

The Cancellation Notice, and its execution after closing, is central to this suit.  The typed document, provided to Plaintiffs by FNBA on April 11, 2006, informed Plaintiffs that although they were "entering into a transaction that will result in a mortgage," they had "a legal right under federal law to cancel this transaction, without cost, within three business days from" the later of three events: (1) the date of the transaction; (2) the date Plaintiffs received the Truth in Lending disclosure; or (3) the date Plaintiffs received "this notice of your right to cancel." Defs.' Br. Supp. Mot. Summ. J. Ex. 1, Att. 3.

The Cancellation Notice instructed Plaintiffs to "cancel this transaction . . . by notifying

---

[2] Although FNBA admits that it provided Plaintiffs with the Cancellation Notice on April 11, 2006, FNBA now contends that the Cancellation Notice "was not required because the Loan was for Plaintiffs' investment property, not Plaintiff's principal residence."  Defs.' Mot. Summ J. ¶ 10 at 4.  This argument forms the basis of the Defendants' Motion for Summary Judgment against Plaintiffs.

[FNBA] in writing" at their address in Tempe, Arizona.  Id.  Plaintiffs could effect cancellation

using "any written statement that is signed and dated by [Plaintiffs] stat[ing their] intention to

cancel," or "by dating and signing" a signature line provided on the Cancellation Notice itself.

Rather confusingly, however, the Cancellation Notice featured two signature lines.  The

first was provided under the words "I WISH TO CANCEL."  The second was provided

thereunder, below the words "I Received Notice of Right to Cancel in Duplicate this Date."  Id.

While the first signature line is apparently provided to effect cancellation of the Loan

("Cancellation Line"), the second signature line is apparently provided to acknowledge receipt of

the Cancellation Notice ("Receipt Line").[3]  The ambiguity of these two signature lines provides

the basis for dispute concerning Plaintiffs' alleged attempt to cancel the Creek Loan shortly after

closing.

### 3.   An Ambiguous Fax: Attempting to Cancel or Acknowledging Receipt?

Plaintiffs received the Cancellation Notice, in duplicate, at the closing on April 11, 2006.

On April 13, 2006—two days after closing—Plaintiffs allegedly sent to FNBA, by facsimile, two

copies of the Cancellation Notice on which both Plaintiffs individually endorsed the Receipt

Line contained thereon ("First Notice").  Notably, they did not endorse the Cancellation Line

provided under the words, "I WISH TO CANCEL."

The parties' factual accounts diverge substantially following the First Notice on April 13,

2006.  Plaintiffs allege that "on or about April 14, 2006," they contacted FNBA to confirm

receipt of the First Notice.  Moreover, Plaintiffs allege that "on or about April 15, 2006," Diana

---

[3] The Court makes no finding of fact or conclusion at law as to whether these signature
lines serve any meaningful distinction.

Hannah, an employee and representative of FNBA, informed Plaintiffs that she received the First

Notice, but advised them that they failed to sign the correct signature line to effectuate

cancellation, and that they should resubmit the Cancellation Notice with the appropriate

endorsement on the Cancellation Line.  Although FNBA acknowledges that it received a fax

communication from Plaintiffs on or about April 14, 2006, it believes that such transmission by

Plaintiffs was intended only to acknowledge receipt of the Cancellation Notice.  FNBA has not

addressed the Plaintiffs' allegations that Diana Hannah instructed them to resubmit the

Cancellation Notice.  However, FNBA claims that on April 25, 2006—fourteen days after

closing—it received from Plaintiffs two additional signed copies of the Cancellation Notice

indicating that Plaintiffs wished to cancel the Loan ("Second Notice").

 The crux of this litigation rests on the validity of the Second Notice.  Plaintiffs contend

that the Second Notice sufficiently cancelled the Creek Loan; by contrast, Defendants contend

that the Second Notice was untimely filed, and therefore did not cancel the Creek Loan.

Moreover, Defendants contend that Plaintiffs are not entitled to the right to cancel provided

under TILA because the property used to secure the Creek Loan is investment property, and not

a principal dwelling.  Consequently, the Creek Loan, Defendants maintain, is not a consumer

mortgage loan under TILA, 15 U.S.C. § 1635, and Plaintiffs never possessed a three-day right to

rescind.[4]

 4.  A Forged Document? The Emergence of New Facts During Discovery

 Plaintiffs move to amend their Complaint based on alleged facts that came to light during

---

 [4] Defendants offer these arguments in their Motion for Summary Judgment, filed on April 17, 2007.  Defs.' Mot. Summ. J. 2.

pretrial discovery.  During his deposition on March 27, 2006, Plaintiff George Antanuos was presented with a letter, purportedly typed and signed by him, written to acknowledge that the Creek Loan application erroneously designated the secured property—at 301 Creek Avenue in Hampton, Virginia—as residential property, when it should have been designated as investment property.  Pls.' Rebuttal Mot. Amend 2–3, Ex. A.  Plaintiffs deny all knowledge of this letter and now allege that the signature contained thereon is a forgery perpetrated by Dipanni, the mortgage broker who initially solicited Plaintiffs for the Creek Loan.  Additionally, Plaintiffs believe that the April 2, 2007, deposition testimony of Jennifer Henry, an employee of FNBA, evidences collusive fraud between FNBA and Provident.  Id. at 3.

    In light of these alleged findings during pretrial discovery, Plaintiffs seek to amend the Complaint in three significant ways.  First, Plaintiffs move to name Provident and Dipanni as defendants.  Second, Plaintiffs assert two additional claims of fraud and breach of contract.  Third, Plaintiffs allege new factual allegations, most of which have been recounted above, to support their additional claims.

### B.    Procedural Posture

    Plaintiffs filed their initial Complaint on August 17, 2006, which Defendants answered on October 17, 2006.  On November 20, 2006, the Court issued a Rule 16(b) Scheduling Order providing the relevant dates and deadlines for pretrial discovery and trial.  The parties were required to identify expert witnesses by January 22, 2007; make Rule 26(a)(2)(B) disclosures by February 20, 2007; complete plaintiff-side discovery by March 13, 2007; complete defendant-side discovery by April 13, 2007; and conduct a final pretrial conference on May 3, 2007.  The jury trial is scheduled for May 22, 2007.

Plaintiff filed the instant Motion for Leave to Amend Complaint on April 6, 2007—over seven and one-half months after the filing of the initial Complaint; over three weeks after Plaintiffs' discovery deadline passed; ten days after the allegedly new facts came to light during the deposition of Plaintiff George Antanuos on March 27, 2007; three and one-half weeks prior to the final pretrial conference; and only six weeks prior to trial. Defendants filed an opposition to the Motion for Leave to Amend on April 17, 2007, and Plaintiffs filed a rebuttal on April 23, 2007. This motion became ripe less than one month prior to trial.

## II.   ANALYSIS

### A.   Legal Framework: Rule 15(a)

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, "a party may amend the party's pleadings only by leave of court or by written consent of the opposing party," and "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "The decision to grant a party leave to amend its pleadings rests with the sound discretion of the district court." Termini v. Life Ins. Co. of N. Am., 464 F. Supp. 2d 508, 518–19 (citing Sandcrest Outpatient Servs. v. Cumberland County Hosp. Sys., 853 F.2d 1139, 1148 (4th Cir. 1988)). However, "[i]n the absence of any declared or apparent reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227 (1962) (quoting Fed. R. Civ. P. 15(a)).

"[D]elay alone is not sufficient reason to deny leave to amend. The delay must be accompanied by prejudice, bad faith, or futility." Johnson v. Oroweat Foods Co., 785 F.2d 503,

7

509–10 (4th Cir. 1986). "[P]rejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party . . . where the amendment is offered shortly before or during trial." Id. at 510. Consequently, "[m]otions to amend that are filed near the time of trial are generally disfavored and require special scrutiny." Bragg v. Kron, 145 F. Supp. 2d 737, 738 (W.D. Va. 2001). Although prejudice is most likely to result where a party moves for an amendment shortly before trial, see, e.g., Johnson, 785 F.2d at 510 (two weeks before trial); Fischbach v. Founders Court, No. 2:94CV765, 1996 U.S. Dist. LEXIS 10125 at *31 (M.D. N.C. June 13, 1996) (three weeks before trial), it is less likely to result if the proposed amendment raises legal theories or facts that the opposing party already anticipated or considered.

Moreover, "discretionary amendments interposed during or promptly after discovery proceedings which have revealed the existence of facts not previously known have been allowed over objections to their timeliness under Rule 15(a) of the Federal Rules of Civil Procedure, the courts reasoning that litigants should not be required to forward claims or defenses on the bases of mere suspicion." Sidney Bernstein, Annotation, Timeliness of Amendments to Pleadings Made By Leave of Court Under Federal Rule of Civil Procedure 15(a), 4 A.L.R. Fed. 123 (2006); see, e.g., Picker Int'l v. Leavitt, 128 F.R.D. 3 (D. Mass. 1989); Am. Elec. Power Co. v. Westinghouse Elec. Corp., 418 F. Supp. 435 (S.D.N.Y. 1976). In Picker International, the United States District Court for the District of Massachusetts accepted the plaintiff's argument that "it could not file [the] amended complaint until well into the discovery process because it was not aware of the scope of defendants allegedly wrongful practices until it deposed [the defendant's employees]." Picker Int'l, 128 F.R.D. at 6. Among the factors justifying the court's

holding in <u>Picker International</u> was the plaintiff's prompt decision to file the amended complaint "once discovery revealed a proper factual basis for the new allegations." <u>Id.</u> at 9.  Other courts have adopted similar reasoning, permitting a party to amend a pleading after the completion of discovery where such motion is filed without undue delay or bad faith.  <u>See</u>, <u>e.g.</u>, <u>Rachman Bag Co. v Liberty Mut. Ins. Co.</u>, 46 F.3d 230, 235 (2d Cir. 1995); <u>Greenberg v Mynczywor</u>, 667 F. Supp. 901, 905 (D.N.H. 1987).

### B.    Application

Plaintiffs move for leave to amend the Complaint on three grounds: (1) the discovery of facts supporting the amendments could not have been made before March 27, 2007, when counsel for Defendants questioned Plaintiff George Antanuos about the letter now alleged to be a product of forgery and fraud; (2) Defendants are not unduly prejudiced because the new claims are based on facts already known to Defendants, and on evidence already possessed by Defendants; and (3) failure to grant leave to amend will unfairly prejudice Plaintiffs because "the absence of Dipanni and Provident would mean Plaintiffs would not have full relief from the fraud perpetrated on them."  Pls.' Rebuttal Mot. Amend 2–4.

Defendants FNBA and Homecoming oppose Plaintiffs' motion on the sole basis that granting it would constitute unfair prejudice "because trial is only five weeks away and the proposed Amended Complaint alleges entirely new factual allegations and legal claims . . . ."  Defs.' Opp. Mot. Amend 4.  Plaintiffs' "egregious delay" in filing this motion, Defendants contend, is inexcusable because "Plaintiffs had all of the information supporting the new factual allegations and claims when they filed the original Complaint in August of 2006."  <u>Id.</u> at 5.

1.      Breach of Contract

The Court agrees with Plaintiffs that the interests of justice shall be served by allowing

Plaintiffs to amend the Complaint to allege breach of contract and new factual allegations in

support thereof.  Plaintiffs' breach of contract claim arises from the very same events and

transactions that form the basis of Plaintiffs' claim for rescission, which itself is but an equitable

remedy for breach of contract.  Accordingly, Defendants were on notice that Plaintiff might

assert such a claim, and may not oppose Plaintiffs' motion on the ground that its addition

constitutes unfair prejudice.  Although Plaintiffs have not informed the Court why they failed to

assert breach of contract in the original Complaint, neither party must engage in substantial

additional discovery to prepare for this claim at trial.  Because the breach of contract claim is

substantially related to Plaintiffs' rescission claim contained in the original Complaint, the Court

**GRANTS**  Plaintiffs' Motion for Leave to Amend Complaint with respect to the new allegation

of breach of contract, as well as the factual allegations in support thereof.

2.      Fraud

The Court also finds that the interests of justice shall be served by allowing Plaintiffs to

amend the Complaint to allege common law fraud.  Although such a claim is largely unrelated to

Plaintiffs' initial claims, which rely on federal statutory law and the remedy of rescission, several

factors militate in favor of allowing Plaintiffs to amend the Complaint in this respect.  First, the

evidence supporting the fraud claim emerged during discovery, when counsel for Defendants

confronted Plaintiff George Antanuos with a letter containing what Plaintiffs' now allege to be a

forged signature.  Although Defendants contend that Plaintiffs "had all the information

supporting the new factual allegations and claims when they filed the original Complaint in

August of 2006," such a claim finds no support in the record.  Indeed, there is no reason to believe that any evidence of fraud could have been in Plaintiffs' possession as of August 17, 2006.  To the contrary, such evidence would likely emerge only after or during discovery.  To deny Plaintiffs an opportunity to allege such a claim based on this new evidence would no doubt undermine their ability to recover for alleged civil wrongs perpetrated against them.

Second, Plaintiffs filed the instant Motion for Leave to Amend Complaint without undue delay.  The deposition of Plaintiff George Antanuos occurred on March 27, 2007.  Within ten days thereafter, Plaintiffs filed the instant motion.  Although Plaintiffs might have been more vigorous in conveying to the Court the import of the newly discovered evidence and the urgency of the instant motion, one may reasonably conclude that the filing was appropriate under the circumstances.  As in Picker International, Plaintiffs filed the Motion for Leave to Amend Complaint "once discovery revealed a proper factual basis for the new allegations."  Picker Int'l, 128 F.R.D. at 9.

Third, the evidence supporting Plaintiffs' claim of fraud originated in the possession of Defendants.  Thus, it appears that Defendants may have to engage in little discovery, if any, to prepare for Plaintiffs' allegation of fraud.  The document in question—a letter purporting to be signed by Plaintiff George Antanuos—was presented to Plaintiffs by counsel for Defendants on March 27, 2007.  That this document was in the initial possession of Defendants is significant.  The Court's calculus would certainly be different if Plaintiffs' allegation of fraud was based on evidence in Plaintiffs' own possession, without notice to Defendants.  But this is not the case, and Defendants' possession of the allegedly forged document undoubtedly provides them with a comparative advantage in the discovery and preparation for Plaintiffs' new allegation of fraud.

11

Finally, the interests of justice, judicial economy, and legal finality militate in favor of granting Plaintiffs' Motion for Leave to Amend Complaint.  Although allowing Plaintiffs to allege additional claims might require some additional preparation for trial, Plaintiffs are entitled to fully litigate their case on the merits.  As Rule 15(a) so provides, leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  As such, the Court **GRANTS** Plaintiffs' Motion for Leave to Amend Complaint with respect to the fraud claim, as well as the factual allegations in support thereof.

        3.    New Defendants

The interests of justice shall not be served by permitting Plaintiffs to amend the Complaint to add new defendants to this suit.  Upon information and belief, Plaintiffs allege that Dipanni and Provident, as agents of FNBA, perpetrated fraud by forging the signature of Plaintiff George Antanuos.  Accordingly, Plaintiffs argue that Dipanni and Provident are necessary and indispensable parties whose "absence . . . would mean Plaintiffs would not have full relief from the fraud perpetrated on them."  Pls.' Rebuttal Mot. Amend 4.  The Court rejects this assertion, however, and finds that Plaintiffs may adequately recover from the named Defendants on the alleged fraud if Dipanni and Provident were acting as agents of FNBA.  To that end, Dipanni and Provident are neither necessary nor indispensable to the timely and just resolution of Plaintiffs' claims.

The Court will not allow Plaintiffs to amend the Complaint to name Michael Dipanni and Provident Capital Mortgage, Inc., as defendants.  Accordingly, the Court hereby **GRANTS** Plaintiffs' Motion for Leave to Amend Complaint in part, and **ADOPTS** such Amended Complaint only insofar as it alleges new facts, fraud, and breach of contract.  The Court shall

disregard any defendants newly named therein.  The Court finally **AFFIRMS** the dates and

deadlines relating to discovery and trial, contained in the Rule 16(b) Scheduling Order issued by

the Court on April 17, 2007, which remain undisturbed.

The Clerk of the Court is **DIRECTED** to fax and forward copies of this Memorandum

Opinion and Order to counsel of record for all parties.  The Clerk is also directed to docket

Plaintiffs' Amended Complaint as necessary to effectively make it part of the record.

**IT IS SO ORDERED.**


_____/s/_____
Robert G. Doumar
UNITED STATES DISTRICT JUDGE


May 1, 2007
Norfolk, Virginia