**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA Newport News Division**

**GEORGE R. ANTANUOS and MONA G. ANTANUOS,**

**Plaintiffs,**

**Civil Action No. 4:06cv104**

**v.**

**FIRST NATIONAL BANK OF ARIZONA and HOMECOMING FINANCIAL NETWORK, INC.**

**Defendants.**

**MEMORANDUM OPINION AND ORDER**

The issue before the Court is whether a debtor in a mortgage loan contract possesses a right to rescind the agreement under the federal Truth in Lending Act ("TILA") when the loan is secured by property that is not the debtor's principal dwelling, even when the creditor provides the debtor with written notice of the right to rescind pursuant to the terms of TILA, 15 U.S.C. § 1601 et seq. The Court now holds that a debtor may not exercise such a TILA-provided right to rescind under these circumstances, as such a right accrues only to a debtor in a credit transaction secured by real or personal property constituting the debtor's principal dwelling.

This issue arises on a Motion for Summary Judgment filed by Defendants First National Bank of Arizona ("FNBA") and Homecoming Financial Network, Inc. ("Homecoming"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants seek dismissal of Plaintiff George and Mona Antanuos' ("Plaintiffs'") claim for damages provided under TILA due to Defendants alleged failure to honor Plaintiffs' attempt to cancel a mortgage loan for

$234,500, consummated on April 11, 2006, and secured by property that Plaintiffs admit to be commercial rental property, not their principal dwelling. As the right to rescind provided by TILA under 16 U.S.C. § 1635 is inapplicable to credit transactions secured by property that is not the debtor's principal dwelling, the Court **GRANTS** Defendants' Motion for Summary Judgment and **ORDERS** judgment against Plaintiffs on the Second Claim of their Amended Complaint seeking damages under the Truth in Lending Act.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts[1]

#### 1. The Loan

This case concerns a mortgage loan contract executed by Plaintiffs and FNBA on April 11, 2006, wherein Plaintiffs agreed to borrow $234,500 for a term of 360 months, and provide as security real property located at 301 Creek Avenue in Hampton, Virginia (the "Loan").[2] While the parties dispute the terms of the interest rate on the Loan, they agree that it carried an

---

[1] In deciding this motion, the Court accepts Plaintiffs' well-pled factual allegations in the Complaint as true, and construes the pleadings, facts, and all reasonable inferences therein in the light most favorable to Plaintiffs. Allbright v. Oliver, 510 U.S. 266, 268, 114 S. Ct. 807 (1994). The Court's prior Order granting Plaintiffs' Motion for Leave to Amend Complaint, issued on May 1, 2007, provides another recitation of the factual background accompanying this case. See Mem. Op. & Order 2–6 (May 1, 2007).

[2] Shortly before the execution of the Loan, on April 3, 2006, the parties entered into a refinanced mortgage contract with FNBA, secured by their primary residence at 317 Syms Street in Hampton, Virginia. Plaintiffs allege that this loan carried a three-year introductory interest rate of 0.99%. Amend. Compl. ¶ 9. Although the circumstances of this loan are likely to be similar to the Loan now in dispute, this prior refinancing loan is not the subject of any claim relating to the instant litigation.

introductory rate of 1.49% for at least part of its term.[3] FNBA is the current holder of the Loan, although Homecoming began servicing the Loan shortly after closing.

2. The Cancellation Notice

At the closing on April 11, 2006, Plaintiffs received from FNBA, among other documents, a document entitled "Notice of Right to Cancel" ("Cancellation Notice" or "Notice"). Because Plaintiffs' alleged right to rescind the Loan is central to this suit, the Cancellation Notice—and its alleged execution after closing—is of paramount importance to the resolution of Plaintiffs' claim. The typed document, prepared by FNBA and provided to Plaintiffs by a mortgage broker allegedly working as FNBA's agent, first informed Plaintiffs that they were "entering into a transaction that will result in a mortgage." Defs.' Br. Supp. Mot. Summ. J. Ex. 1, Att. 3. However, the Notice also informed Plaintiffs of their "legal right under federal law to cancel this transaction, without cost, within three business days from" the later of three dates: (1) the date of the transaction; (2) the date Plaintiffs received the Truth in Lending disclosure; or (3) the date Plaintiffs received "this notice of your right to cancel. Id.

According to the Cancellation Notice, Plaintiffs could "cancel this transaction . . . by notifying [FNBA] in writing" at an address in Tempe, Arizona. Id. Plaintiffs could effect cancellation in two ways: first, by providing FNBA with "any written statement that is signed and dated by [Plaintiffs] stat[ing their] intention to cancel;" second, "by dating and signing" a signature line provided on the Notice itself. Id. Some confusion accompanies the latter option, however, as the Cancellation Notice featured two signature lines—the first provided under the

---

[3] Plaintiffs contend that FNBA offered the rate of 1.49% for three (3) years, while FNBA maintains that such a rate applied for only thirty (30) days.

words "I WISH TO CANCEL;" the second provided thereunder, below the words "I Received Notice of Right to Cancel in Duplicate this Date." Id. Although the Court makes no finding of fact at this time as to whether these signature lines serve any meaningful distinction, the first signature line is apparently provided to effect cancellation of the Loan ("Cancellation Line"), while the second signature line is apparently provided to acknowledge receipt of the Cancellation Notice ("Receipt Line").

3. Two Communications

Plaintiffs received the Cancellation Notice, in duplicate, on April 11, 2006. Two days thereafter, on April 13, 2006, Plaintiffs sent to FNBA, by facsimile, two copies of the Cancellation Notice on which both Plaintiffs individually endorsed the Receipt Line contained thereon. They did not endorse the Cancellation Line provided under the words, "I WISH TO CANCEL."

The parties' factual accounts diverge substantially following this communication on April 13, 2006. Plaintiffs allege that "on or about April 14, 2006," they contacted FNBA to confirm receipt of their prior communication on April 13, 2006. Moreover, Plaintiffs allege that "on or about April 15, 2006," Diana Hannah, an employee and representative of FNBA, informed Plaintiffs by phone that she received the initial fax, advised Plaintiffs that they failed to sign the correct signature line to effectuate cancellation, and asked that they resubmit the Notice with the appropriate endorsement on the Cancellation Line. Plaintiffs allege to have faxed the Notice a second time, signed as instructed by FNBA, sometime after April 14, but before April 25, 2006.

FNBA acknowledges that it received a fax communication from Plaintiffs on or about

April 14, 2006, but maintains that such transmission "did *not* indicate Plaintiffs wished to rescind the Transaction," and "merely indicated that Plaintiffs had received the Notice at Closing." Defs.' Br. Supp. Mot. Summ. J. 11 (emphasis in original). FNBA further claims that on April 25, 2006—fourteen days after closing—it received from Plaintiffs, by fax, two additional signed copies of the Cancellation Notice indicating that Plaintiffs wished to cancel the Loan. Nevertheless, Defendants have not rescinded the Loan, and maintain that Plaintiffs remain contractually liable.

Plaintiffs allege that Defendants' refusal to rescind the Loan constitutes an unlawful violation of TILA, which provides a debtor with a statutory right to rescind a credit transaction under some circumstances. Defendants respond by claiming that Plaintiffs never possessed a right to rescind under TILA because Plaintiffs' property used to secure the mortgage is not a "principal dwelling," as defined by the statute. Additionally, Defendants argue that even if Plaintiffs did possess such a right, they failed to provide FNBA with notice of the cancellation within the statutorily-prescribed time.

### B. Procedural Posture

Plaintiffs filed their initial Complaint on August 17, 2006, which Defendants answered on October 17, 2006. On April 6, 2007, Plaintiff filed a Motion for Leave to Amend Complaint, which this Court granted on May 1, 2007. Defendants filed the instant Motion for Summary Judgment on April 17, 2007, and Plaintiffs opposed on April 27, 2007. A jury trial for this matter is scheduled for May 22, 2007.

## II. ANALYSIS

### A. Motion for Summary Judgment (Rule 56)

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted where "the pleadings, depositions [and] answers to interrogatories . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "The purpose of summary process is to avoid a clearly unnecessary trial," Continental Can Co. v. Monsanto Co., 948 F.2d 1264, 1265 (Fed. Cir. 1991) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)), and "it is not designed to substitute lawyers' advocacy for evidence, or affidavits for examination before the fact-finder, when there is a genuine issue for trial." Continental Can Co., 948 F.2d at 1265.

In ruling on a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party. United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). The moving party has the threshold burden of informing the court of the basis of the motion, of establishing that there is no genuine issue of material fact, and of showing that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); see also Castillo v. Emergency Med. Assoc., 372 F.3d 643, 646 (4th Cir. 2004).

Once the moving party satisfies this threshold showing under Rule 56(c), the burden of production shifts to the non-moving party. Celotex Corp., 477 U.S. at 322–23, 106 S. Ct. at 2552. The non-movant must "go beyond the pleadings and by [his] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. at 2553. "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S. Ct. at 2552.

Thus, to defeat summary judgment, the non-movant must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that a genuine issue of material fact exists. See id. at 324, 106 S. Ct. at 2553.

**B. Party Arguments**

Defendants offer two arguments in support of their motion for summary judgment. First, they argue that Plaintiffs cannot recover under TILA because a debtor's right to rescind created thereby only accrues in credit transactions secured by property that is the debtor's principal dwelling. Defs.' Br. Supp. Mot. Summ. J. 6–8. To the extent that the Loan at issue is secured by Plaintiffs' commercial rental property (located at 301 Creek Avenue in Hampton, Virginia), and *not* Plaintiffs' principal dwelling (located at 317 Syms Street in Hampton, Virginia), Plaintiffs' reliance on TILA is misplaced. Moreover, Defendants maintain that the TILA-created right to rescind does not accrue simply because Plaintiffs received the Cancellation Notice at closing. Id. at 8–10. Thus, to the extent that TILA is wholly inapplicable, Defendants argue, Plaintiffs cannot recover TILA damages, and summary judgment on the Second Claim of the Complaint is warranted.

Defendants offer the second argument in the alternative, arguing that even if Plaintiffs possess a statutory right to rescind under TILA, they failed to timely notify FNBA of their decision to cancel the Loan. Id. at 10–12. Accordingly, Plaintiffs are not entitled to rescission or damages under TILA. To support this argument, Defendants allege that Plaintiffs' first transmission of the Cancellation Notice on April 13, 2006, failed to clearly convey Plaintiffs' intent to cancel the Loan. Further, Defendants point to Plaintiffs' own admission that the second transmission of the Cancellation Notice, containing additional signatures, occurred after TILA's

three-day rescission deadline.

In response, Plaintiffs do not dispute that a debtor's right to rescind under TILA applies only to credit transactions secured by a debtor's principal dwelling. Additionally, Plaintiffs do not dispute the characterization of their property securing the Loan as commercial rental property. Finally, Plaintiffs do not dispute that they transmitted the second Cancellation Notice to FNBA after TILA's three-day rescission period. Rather, to rebut Defendants' arguments, Plaintiffs rely upon the equitable principle of "estoppel by inconsistent positions," arguing that "a lender can be prohibited from asserting [that] rescission rights do not apply where the borrower relied to his detriment on the misrepresentation that rescission rights applied to a business loan." Pls.' Mem. Opp. Mot. Summ. J. 13. Thus, Plaintiffs do not contend that they possess a right to rescind the Loan pursuant to TILA, per se, but rather, that they possess such a right because the "legal principles of waiver and equitable estoppel now prohibit Defendant FNBA from claiming" that the right did not exist. Id. at 14. Plaintiffs place no reliance on the statutory text of TILA, nor the legal interpretations thereof, to support their TILA claim. Notably, Plaintiffs do not "go beyond the pleadings" to rebut the facts alleged by Defendants, but rely fully on equitable principles suggesting the statutory right to rescind arose by virtue of Defendants' representations during the consummation of the Loan agreement.

**C. Truth in Lending Act (15 U.S.C. § 1601 et seq.)**

Plaintiffs have failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552. This conclusion follows from an understanding of those provisions in the Truth in Lending Act relied upon by Plaintiffs in the

Complaint. Such provisions do not offer Plaintiffs a right to rescind under the circumstances of this case.

The first provision on which Plaintiffs rely is codified at 15 U.S.C. § 1635. It states as follows:

> Except as otherwise provided in this section, in the case of any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in *any property which is used as the principal dwelling of the person to whom credit is extended*, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title [15 U.S.C. §§ 1601 et seq.], whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. § 1635(a) (emphasis added). The plain statutory text of § 1635 provides that a debtor's right to rescind arises only when the loan transaction is secured by the debtor's "principal dwelling." Although TILA itself does not define a "principal dwelling," Title 12 of the Code of Federal Regulations implementing TILA, known as Regulation Z, provides some guidance. First, Regulation Z defines a "dwelling" as "a residential structure that contains 1 to 4 units, whether or not that structure is attached to real property." 12 C.F.R. § 226.2(a)(19) (2007). Second, it provides that "[a] consumer can only have *one* principal dwelling at a time. Thus, a vacation or other second home would not be a principal dwelling." 12 C.F.R. § 226 Supp. I, Section 226.2(a)(24)(3) (2007) (emphasis in original); see also Scott v. Wells Fargo Home Mortgage, Inc., 326 F. Supp. 2d 709, 715 (quoting Scott v. Long Island Sav. Bank, 937 F.2d 738, 741 (2d Cir. 1991)).

The second statutory provision relevant to Plaintiffs' TILA claim is found at 15 U.S.C. § 1603. It provides that TILA "does not apply to . . . [c]redit transactions, other than those in

which a security interest is or will be acquired in real property, or in personal property *used or expected to be used as the principal dwelling of the consumer*, in which the total amount financed exceeds $ 25,000." 15 U.S.C. § 1603(3) (emphasis added). The corresponding provision in Regulation Z further states that TILA "does not apply to" "[a]n extension of credit not secured by real property, or by personal property used or expected to be used as the principal dwelling of the consumer, in which the amount financed exceeds $25,000 or in which there is an express written commitment to extend credit in excess of $25,000." 12 C.F.R. § 226.3(b) (2007). In light of § 1603 (and § 226.3(b)), TILA applies only to credit transactions secured by real or personal property used or expected to be used as the principal dwelling of the debtor. Credit transactions secured by real or personal property used for *other* purposes, such as commercial rental property, fall outside the scope of TILA's coverage.

Plaintiffs admit that the property used to secure the Loan—located at 301 Creek Avenue in Hampton, Virginia—does not constitute a principal dwelling. Although Plaintiffs purchased the Creek Avenue property in 1997, they admitted through deposition testimony that they have never lived there, and that it has always been used as commercial rental property. G. Antanuos Dep.10:7–25, 11:1–5; M. Antanuos Dep. 6:12–17.[4] Plaintiffs purchased their residence at 317 Syms Street in Hampton, Virginia, in 1992, and have resided there since 1996. G. Antanuos Dep. 8:9–25, 10:1–18; M. Antanuos Dep. 6:8–11. Plaintiffs consider this property, 317 Syms Street, to be there "principal residence." G. Antanuos Dep. 8:21–22.

The factual admissions made by Plaintiffs regarding the nature of the property used to

---

[4] The deposition of Plaintiffs George and Mona Antanuos are attached as Exhibits 2 and 3, respectively, to Defendants' Brief in Support of Their Motion for Summary Judgment.

secure the Loan leaves no doubt that TILA is inapplicable to this case. Plaintiffs have but one principal dwelling, at 317 Syms Street, and that property was not used to secure the credit transaction executed with Defendants. Consequently, in view of § 1635, § 1603, and the corresponding federal regulatory provisions, Plaintiffs may not seek recovery under TILA. Accordingly, Plaintiffs' Second Claim, seeking damages under 15 U.S.C. § 1640(a)(1)–(3), must fail on summary judgment.

Plaintiffs may not persist in their TILA claim simply because Defendants provided them with written notice of a right to rescind at closing on April 11, 2006. Legal authority exists to support such a holding. The Official Staff Interpretation of Regulation Z[5] addresses this issue in the context of an exemption provided under TILA, at 15 U.S.C. § 1603(1).[6] The interpretation provides as follows:

> A creditor must determine in each case if the transaction is primarily for an exempt purpose. If some question exists as to the primary purpose for a credit extension, the creditor is, of course, free to make the disclosures, and *the fact that disclosures are made under such circumstances is not controlling on the question of whether the transaction is exempt*.

12 C.F.R. § 226 Supp. I, Section 226.3(a)(1) (2007) (emphasis added). Although this commentary relates to the TILA exception provided under § 1603(1), and not the TILA exception now at issue, § 1603(3), the two exceptions are similar enough that the fundamental principle of this commentary applies equally to both. Just as a creditor may not know the

---

[5] Contained in Supplement I to Part 226 of Title 12 of the Code of Federal Regulation.

[6] This provision exempts TILA from "[c]redit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes, or to government or governmental agencies or instrumentalities, or to organizations." 15 U.S.C. § 1603(1). The parallel provision under Regulation Z is found at 12 C.F.R. § 226.3(a) (2007).

principal purpose of a credit transaction, it is reasonable that, in some circumstances, a creditor may not know whether its security interest constitutes the debtor's principal dwelling or not. As such, a creditor may provide a debtor with notice of the TILA-created right to rescind, even if no such right exists in fact because the property is not the debtor's principal residence. Such a disclosure is not controlling on whether the transaction is exempt. Rather, the reality of the matter must control whether the transaction falls within the domain of TILA. If the facts bear out, as in this case, that the debtor's property is not his or her principal dwelling, then it may very well be exempt from TILA under § 1603(3), regardless of any cancellation notice the creditor may have provided the debtor.

The Court acknowledges the possibility that some lenders may provide prospective debtors with notice of the TILA right to rescind simply to induce the debtor's execution of a loan agreement. Contract, quasi-contract, and promissory estoppel are but three legal theories on which debtors in such circumstances might recover against the debtor who misrepresents the right to rescind by abusing TILA-mandated notice. This Court need not expand the scope of TILA to combat the possibility of such abuse.

In their Amended Complaint, Plaintiffs allege FNBA breached the Loan agreement by failing to honor the "contractual right" "to rescind the loan contract within three (3) days of closing . . . ." Amended Compl. ¶¶ 55–62. Thus, even Plaintiffs recognize possible recovery under a legal theory other than TILA. This Court agrees with such a course of action, and will not expand the scope or undo the terms of TILA in the face of clear regulatory commentary to the contrary. Accordingly, the Court holds that Plaintiffs do not have a right to rescind under TILA simply because Defendants provided them with written notice of such a right.

In view of the foregoing, the Court **GRANTS** Defendants' Motion for Summary Judgment with respect to Plaintiffs' Second Claim seeking recovery under TILA. Despite the relative clarity of law concerning this matter, Plaintiffs did not make any misrepresentations to the Court in vigorously pursuing this cause of action against Defendants. Accordingly, the Court declines to award Defendants reasonable expenses and attorney's fees incurred in presenting this motion under Rule 11(b) of the Federal Rules of Civil Procedure. Surviving this action are Plaintiffs' remaining claims for rescission, fraud, and breach of contract.

The Clerk of the Court is **DIRECTED** to fax and forward copies of this Memorandum Opinion and Order to counsel of record for all parties.

**IT IS SO ORDERED.**

/s/
UNITED STATES DISTRICT JUDGE

May 7, 2007
Norfolk, Virginia